UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARLYLE OWEN DALE,

    Plaintiff,

vs.    Case No. 6:11-cv-1957-Orl-37GJK

UNITED STATES OF AMERICA,

    Defendant.

## ORDER

This cause is before the Court on the following:

1. United States of America's Motion to Dismiss or, Alternatively, Motion for Summary Judgment on Plaintiff's Intentional Torts (Doc. 44), filed March 1, 2013;

2. Carlyle Dale's Response in Opposition to the Government's Partial Motion to Dismiss or, Alternatively, for Summary Judgment (Doc. 45), filed April 1, 2013; and

3. United States of America's Withdrawal of Motion to Dismiss Battery Claim in Light of *Millbrook v. United States*, 569 U.S. ___ (2013) (Doc. 46), filed April 4, 2013.

## BACKGROUND

Plaintiff, Carlyle Dale, is a Jamaican national and a lawful permanent resident of the United States. (Docs. 1, 20, ¶ 4.) He was imprisoned in New York after pleading guilty to an attempted assault. (Id. ¶ 17.) Upon the completion of his term of imprisonment in New York in 2005, Dale was detained by the federal government while

it pursued deportation proceedings against him. (*Id.* ¶¶ 19–20.) Those proceedings remain pending; however, Dale was released from federal custody following a favorable court ruling. (*Id.* ¶¶ 21–25.) In this lawsuit, Dale seeks damages for injuries that he sustained while he was detained by the federal government.

Dale was held in civil detention from 2005 to 2010 at two facilities in Louisiana, the Oakdale Federal Detention Center and the LaSalle Detention Facility. (*Id.* ¶¶ 20, 25, 28, 43.) He suffered from several chronic medical conditions, including asthma, a cardiovascular condition, diabetes, and pancreatitis, while he was detained. (*See, e.g.*, *id.* ¶¶ 30, 31, 65.) Dale testified that he was repeatedly denied needed medical treatments for these and other medical conditions. (Dale dep. 76:16–78:12.)[1] He identified two physician assistants in particular who, on multiple occasions, refused to provide treatment to him. (*Id.* 56:19–57:12.) Even though he would report to the medical facility on sick call with breathing problems, these two individuals would tell Dale that "[t]here]s nothing wrong with you" and send him back to his detention unit without providing him treatment. (*Id.* 58:3–11; 59:5–62:5; 68:24–71:1.) According to Dale, at least one of these individuals told his subordinates not to provide medical care to Dale. (*Id.* 63:7–64:21.)

Dale's medical conditions worsened to a point where he was hospitalized. He was hospitalized for the first time in 2008 following his transfer from Oakdale to LaSalle. (*Id.* 85:8–14; 89:22–90:20.) He was suffering from "significant respiratory distress" when he was seen at the emergency room. (Doc. 45-7.) He was hospitalized for over a week, during which time he received treatment for his respiratory condition and chronic heart

---

[1] The Court uses "Dale dep." in this Order to refer to the June 6, 2012 deposition filed at Docket Nos. 44-1 and 44-2.

failure. (*Compare id. with* Dale dep.90:21–91:1.) A few months later Dale was admitted a second time for acute diabetic ketoacidosis. (Doc. 45-15.) He was treated by the hospital and released after a week or so. (*Id.*) He was hospitalized for a third time in March and April 2009. (Docs. 1, 20, ¶ 36.)

Dale was admitted to the hospital again in June 2009 for acute respiratory distress. (Doc. 45-8.) His discharge summary notes that, despite receiving treatment, Dale "developed near respiratory arrest." (*Id.*) He was hospitalized for 14 days and received treatment for his respiratory condition as well as other serious medical conditions. (*Id.*) His medical records indicated that he required surgery to treat a "large inguinal hernia" once his respiratory condition improves. (*Id.*)

Among other claims, Dale contends that the actions and omissions of the medical staff at Oakdale and LaSalle form the basis for claims of intentional and negligent infliction of emotional distress under Louisiana law. The Government moves for summary judgment on these claims.[2] (Doc. 44.) Dale opposes. (Doc. 45.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must "draw all

---

[2] The Government has withdrawn the remaining portions of its motion. (Doc 46.)

3

justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citation omitted).

## DISCUSSION

The Government argues that Dale cannot make out a claim for intentional infliction of emotional distress based on the treatment that he received while detained in Oakdale and LaSalle because such conduct was allegedly not extreme and outrageous. The Government argues further that there is no evidence that Dale suffered severe emotional distress and, therefore, his intentional and negligent infliction of emotional distress claims are unsupported. Dale contends that the record in this case creates a genuine dispute of fact as to whether the Government's conduct was extreme and outrageous and as to whether Dale's emotional distress was severe.

**I.    Intentional Infliction of Emotional Distress Claim**

In Louisiana,[3] to establish a claim for intentional infliction of emotional distress, a plaintiff must prove: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The Government's challenge relates to the first and second elements of Plaintiff's claim.

**A.    Extreme and Outrageous Conduct**

In order to satisfy the first element, the conduct must be "so atrocious as to pass

---

[3] Louisiana law applies because the conduct that forms the basis of Dale's claims occurred while he was detained in that state. 28 U.S.C. § 1346; *see also Gonzalez-Jiminez de Ruiz v. United States*, 378 F.3d 1229, 1230 n.1 (11th Cir. 2004)

4

the boundaries of decency and to be utterly intolerable to civilized society." *Robertson v. August*, 820 So. 2d 620, 629 (La. Ct. App. 2002). The conduct must be more than mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* Rather, it must be intended to "cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like." *Id.* The outrageousness "may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *White*, 585 So. 2d at 1209–10. Examples of this include a principle of a high school who bullied a student, *see* Restatement (Second) of Torts § 46 cmt. e, illus. 7 (1971), or a police officer who initiated a criminal investigation to buoy the officer's defense of a false arrest claim, *Taylor v. State*, 617 So. 2d 1198, 1204–5 (La. Ct. App. 1993).

Here, Dale was detained by the federal government. He had known chronic medical conditions that required ongoing medication and occasional treatments. He was obliged to use the medical units of the Government's detention facilities. The personnel staffing the medical unit at these facilities, according to Dale, refused to treat him. Dale says that they directed others not to provide medical treatment to him. He also explained in his deposition how, if he did not comply with the direction of the medical staff, he was afraid that he would be sent to the detention center's special housing unit. Dale was hospitalized at least four times for acute respiratory distress, yet the medical staff at Oakdale and LaSalle told him (according to Dale) that "he was faking it" and that "nothing was wrong with him" during sick call.

These circumstances are similar to the circumstances identified by the restatement and Louisiana case law where the outrageousness of a defendant's

5

conduct arises from an abuse by the defendant of a position that gives the defendant power to affect his interests of another. *White*, 585 So. 2d at 1209–10. The medical staff in this case allegedly refused to provide assistance to Dale on multiple occasions. They allegedly had the power to enforce their will by withholding future medical treatment or by having Dale confined in a special housing unit. While the Court recognizes that many of Dale's contentions and assertions seem to rest solely on his own testimony, the record reflects disputed issues of fact with regard to the outrageousness of the conduct of the medical staff. Summary judgment is therefore not appropriate.

### B.     Severe Emotional Distress

The Government also contends that there is no evidence to support a finding that Dale suffered severe emotional distress. Dale points to the record of a mental health interview that he had while detained as well as his own testimony to support his claim of severe emotional distress. It seems that the heart the of Government's argument is that Dale offers no mental health expert in support of his claims and that there is no record from a mental health expert that he suffered or is suffering from distress. Such evidence, however, is not required by Louisiana courts. *See Dubuy v. Luse*, 17 So. 3d 425, 427–29 (La. Ct. App. 2009) (noting that, while unusual, there is no requirement for testimony from mental health experts in support of an intentional infliction of emotional distress claim). Again, it appears that the record evidence in support of this element is thin and based mainly on Dale's own deposition testimony. His testimony, however, is enough to create a disputed issue of fact and foreclose summary judgment.

### II.    Negligent Infliction of Emotional Distress Claim

In Louisiana, if negligent conduct causes emotional distress that is accompanied by physical injury, illness, or other physical consequence, the conduct need not be

outrageous for the plaintiff to recover. *See Moresi v. State ex rel. Dep't of Wildlife Fisheries*, 567 So. 2d 1081, 1095 (La. 199). A claim for negligent infliction of emotional distress can also be had where there is an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.*

Here, Dale's detention, his hospitalizations, his deposition testimony, and his medical records provide a sufficient basis for the Court to find that there are genuine disputes of material fact concerning this claim. *See, e.g.*, *Page v. Benson*, 101 So. 3d 545, 554–55 (La. Ct. App. 2012) (denying summary judgment on claim of negligent infliction of emotional distress because tenant alleged that he was injured and suffered anxiety and fear as a result of the landlord entering his apartment and making his toilet handicap-accessible). The Court therefore denies the Government's motion as to this claim.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the United States of America's Motion to Dismiss or, Alternatively, Motion for Summary Judgment on Plaintiff's Intentional Torts (Doc. 44) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 13, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record